Robert Purbeck
451 W Waterbury Drive
Meridian, ID 83646
208-863-6957
rpurbeck@gmail.com
(Pro-Se)

FEDERAL DISTRICT COURT

DISTRICT OF IDAHO

ROBERT PURBECK,

        Petitioner,

vs.

 UNITED STATES OF AMERICA

JOSHUA HURWIT (Official Capacity)

RYAN BUCHANAN (Official Capacity)

Defendant

Case No.: 1:24-cv-00356-DCN

IN RE: ROBERT PURBECK'S
PETITION FOR A WRIT OF MANDAMUS TO CURE
BRADY VIOLATION AND CONTEMPT OF DUE
PROCESS PROTECTIONS ACT ORDER

HEARING REQUESTED PRIOR TO DATE OF
IRREPERABLE HARM OCCURING ON SEPT 11TH,
2024

# MANDAMUS RELIEF IS REQUIRED TO PREVENT IRREPERABLE HARM

   *"There is an epidemic of Brady violations abroad in the land. Only judges can put a stop to it."*

   *United States v. Olsen, 737 F.3d 625 (9th Cir. 2013)*

Petitioner is making a request of this court to order the United States Department of Justice in Idaho to do

its constitutionally required job to make the truth known. Petitioner makes this request to the court

because the collective United States has been fooled by the former civil defendants in this court, two

District of Idaho AUSA's, and AUSA Michael Herskowitz a religious zealot who has covered up

evidence of perjury to satisfy his own apostate interpretation of a heretical belief system.[1] Two FBI agents

---

[1] As will be pointed out Mr. Herskowitz's apostate beliefs go directly against the entire Word of God including the
New Testament, also the Torah part of the Tanakh. Zealotry and subornation of perjury has no place in any Federal
District Court. His weakening of 9th circuit and constitutional law for the other 10 circuits will only harm Jews that
the government wants to persecute that live in the 9th circuit by allowing falsification of nexus to courts with no

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 1

Coffin and Pinette have both committed perjury in Mr. Purbecks criminal case and Coffin has committed perjury in at least one of his interrogatory answers in Idaho District court case 1:21-cv-00047-BLW. The evidence of the perjury was developed in the civil case because the United States and the Magistrate Court relying on false assertions from the two FBI agents used its substantial authority to prevent Mr. Purbeck from putting up an adequate credibility defense in a suppression hearing in his only chance at due process in the Northern District of Georgia by depriving him of needed witnesses. The government's only 2 called witnesses committed perjury in the hearing as will be detailed below[2]. To prevent the truth from being found in the adversarial system, the United States in the District of Idaho demanded the defense in Georgia comply with Touhy regulations. These regulations are unconstitutional in the 9th circuit in a criminal case to compel witnesses. Then used these same Touhy regulations to stymie the continuation of truth-finding process when it was known to Mr. Shaefer and Mrs. Ward-Crane that the agents committed perjury in Georgia to harm both Mr. Purbecks criminal defense and civil prosecution. These are witnesses that Agents Coffin and Pinette knew would be able to undermine their false testimony. The government, relying on the false assertions and plausible deniability, argued that the testimony of the witnesses would be duplicitous. The magistrate court abused its discretion and suppressed the witnesses defense asked for based on the flawed reasoning of duplicity he applied from an unpublished 6th circuit case. In 1:21-cv-00047-BLW however, the evidence developed shows that in fact the government and its prosecution partners are knowledgeable of numerous witnesses who can undermine the credibility of the two agents and still the government has not collected the evidence from

_____

oversight. Mr. Herskowitz should refer to the book of Esther to see Yahweh's just punishment for wicked evildoers like him. Mr. Purbeck believes anyone should be allowed to worship in any manner as long as it doesn't interfere with someone else's inalienable rights.
[2]Mr. Purbeck will make a substantial showing of prejudice. Two Ada County witnesses have both undermined the two FBI agents self-serving testimony. Mr. Purbeck has made requests for evidence from Sheriff Bartlett and Former SSRA Doug Hart which have gone ignored. He has also demanded Ward-Crane provide the same. This is not a case like Perales v. United States, 1:21-cv-00125-DCN (D. Idaho Oct. 18, 2022) * 10 where it is rank speculation of missing documents. There are at least 2 witnesses more who can bolster the current 2 witnesses.

the witnesses and provided it to Mr. Purbecks defense even though requested. On March 19th, 2024 the government [3] willfully made a false declaration in open court that they had complied with all of their Brady obligations in the criminal case. The government from the very beginning of the case intended to hide evidence from the defense. Mr. Coffin has touched every single piece of evidence in this case, and he repeatedly committed perjury in the suppression hearing. Mr. Purbeck would not have plead guilty if he had been given a fair opportunity to view suppressed evidence and knew the agents wouldn't perjure themselves in court while an easily persuaded judge looked the other way to obvious perjury.

```
 5           THE DEFENDANT:  Does that include Brady obligations of
 6   the Government?
 7           THE COURT:  No.  The Brady obligations are separate.
 8           But, Mr. Herskowitz, I'll let you answer that.  I mean,
 9   if he's pleading guilty today, the Government's under a duty to
:0   comply with Brady regardless of the status of the case.  I can say
:1   that and I presume that the Government not only intends to do that
:2   but has done that so far in the case.
:3           MR. HERSKOWITZ:  Absolutely, Your Honor.  Yes.
```

```
 8           DO YOU UNDERSTAND THAT?
 9           THE DEFENDANT:  If, however, the Government didn't
10   comply with Brady, though, I would still have reason to?
11           THE COURT:  Mr. Herskowitz, what would you say?
12           MR. HERSKOWITZ:  Judge, we've complied with Brady and
13   the appeal waiver is clear and it's been provided to Mr. Purbeck.
14   And I'm sure his counsel has talked with him about that and the
15   Court has talked with him about that.                          4
```

---

[3] Mr. Purbeck cannot prove definitively that Mr. Herskowitz is aware of the Brady/Napue violation. He has willfully failed repeatedly to investigate especially from witnesses who have testified and whose sworn testimony will contradict the false testimony of his 2 FBI agent witnesses. Mr. Coffin is a part of the prosecution team was present and smirked during the false declaration made by Mr. Herskowitz. Further James Schaefer was aware of the inconsistent statements in the testimony as was Darci Ward-Crane who has stymied Petitioners attempts at getting depositions of corroborating witnesses. It is not necessary for the prosecutor himself to be aware of the Napue/Brady violations as is detailed in Price. U.S. v. Price, 566 F.3d 900 (9th Cir. 2009) * 908 The agents committing perjury knew of the perjury as well as corroborating witnesses from a prosecution partner knew about the circumstances that was perjured regarding including SSRA Douglass Hart, Sheriff Bartlett, and Stephen O'Meara.

[4] Change of Plea hearing 3-19-2024 3:21-cr-00004-TCB-RGV-1 * 7-8 (Exhibit 1) The judge initially makes the constitutionally correct answer, but then allows Mr. Herskowitz to convince him later in the transcript that the government doesn't have to provide Brady evidence. Talk about perverse incentives. The government could win every single case by committing perjury in hearings and to get warrants and then forcing a waiver to protect wicked

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 3

The **government is seeking to enhance Petitioners punishment by 2 points** for obstruction in the criminal matter while simultaneously obstructing and perverting the truth-seeking supervisory powers of the court. The government knows beyond a reasonable doubt its only two called agents committed perjury in the suppression hearing to material facts. This is much more serious than a misinformed magistrate determining Mr. Purbeck was less credible than the agents when they can be shown to have committed actual perjury to provable material facts in the same proceeding. The agents knew beforehand exactly what Mr. Purbeck would testify to from his civil filings and likely conspired with the AUSA Mr. Herskowitz to commit perjury. The court is asked to order the government in Idaho to comply with the Due Process Protections Act and to correct the Napue violation its agents and prosecution partner Ada County know was committed in the Northern District of Georgia. Also, the Touhy regulations that the government made the defense comply with were clearly unconstitutional for an AUSA in Idaho to demand defense comply with and the rule of lenity should apply, and this court should order additional fact finding be made where the District of Idaho subverted the constitution to cause a due-process failure in Georgia. Further the Touhy regulations are a capricious set of regulations that have no business being utilized for a criminal case and the reversal of Chevron should allow this court to make a first impression that Touhy regulations are unconstitutional for any criminal case. If the government had complied with its duty to correct a Napue error in September 2022 the 9th circuit would not have issued the ruling preventing 4th amendment relief in the civil matter until July 2023. Mr. Purbeck would have had adequate time to request summary judgment against the perjuring agents before the 9th circuit ruling and thus his 5th amendment due process rights in the civil matter were extinguished by the Napue violation as well and demands relief against future uses of this unlawful strategy by wicked civil servant defendants. The agents and AUSA's should be faced with sanctions for failing to disclose this evidence.

---

perjurers. How dare someone try and invoke their rights, that is obstruction. Petitioner can guarantee this is Mr. Herskowitz's go-to strategy for winning cases.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 4

# RELIEF IS WARRANTED

The government, including its prosecution partners negotiated a plea deal with Petitioners' attorney in bad faith knowing that they possessed Brady/Napue evidence that they have failed to turn over while it was useful. The plea deal includes unconscionable provisions preventing collateral attacks on the prosecution and allows the personnel willfully obstructing justice to be held harmless.[5] However, Brady is an ongoing obligation of the Government and is required to be turned over while it is useful including both for *suppression hearings*[6], and for the *punishment* phase[7]. The Brady obligation in this case is ongoing until at least sentencing. And the current state of the case is that the government is operating in willful contempt of the District of Idaho's Due Process Protections Act order ordered in the rule 5 hearing and issued on two occasions including resolving the governments objections to general order 389 and substituting it for general order 392 on March, 22nd 2021. Further, the Government can't hide behind the plea waivers as the falsehoods they are suppressing are a due process failure and cannot be allowed to stand by waiver.[8]

The government prosecution team outside of Messrs. Coffin and Pinette has been aware of perjured testimony in the suppression hearing by the two former defendants beginning on August 21st,

---

[5] Because Mr Coffin and Mr. Pinette are participating in an ongoing obstruction of justice they should still be subject to suit for new torts of vindictive prosecution, obstruction of justice and deprivation of rights under color of law because the crimes have continued past the waiver on March 19th, 2024.

[6] United States v. Gamez-Orduño, 235 F.3d 453 (9th Cir. 2000) *461 "The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different…" "Such a due process violation may be cured, however, by belated disclosure of evidence, so long as the disclosure occurs '"at a time when disclosure would be of value to the accused."

[7] Parker v. Cnty. of Riverside, 78 F.4th 1109 (9th Cir. 2023) "Under Brady, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to *punishment*, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. Brady requires the disclosure of "impeachment evidence as well as exculpatory evidence." Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Even *inadvertent failure* to disclose may violate this duty, which does not require a criminal defendant's request. See United States v. Bruce, 984 F.3d 884, 894 (9th Cir. 2021)." (Emphasis added)

[8] "he could not waive the freestanding ethical and constitutional obligation of the prosecutor" *Com. of Northern Mariana Islands v. Bowie*, 236 F.3d 1083, 1095 (9th Cir. 2001)

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 5

2023 and September 8th, 2023 when the two Ada County employees Ryan Pacheco and Steven O'Meara testified under oath in depositions requested by the former defendants. The government has failed to investigate the perjury and even failed to turn over the deposition transcripts even though Petitioner informed the court of the perjury in his motion in response to the defendants' motions for judgement on the pleadings. Mr. Purbeck was only able to get copies of the transcripts in March of 2024 long after the evidence of perjury was useful in the criminal matter. There is one additional transcript Mr. Purbeck needs to procure that shows the agents prevented Mr. Purbeck and Ms. Ganger from making a telephone call until after both had been subjected to interrogation. The agents found the testimony significant to gather because it was to show that both Mr. Purbeck and Ms. Ganger forgot about a phone call that occurred during the day of the warrant execution after it was nearing completion. Both Mr. Purbeck and Ms. Ganger have testified they weren't allowed to use a phone during the search. Apparently, phone records[9] show that that wasn't strictly true. They were allowed to make one phone call only at the conclusion of the search. But the true value of the testimony is that under Ganwich v. Knapp the FBI violated the substantial 4th amendment rights of the people aggrieved of the search[10]. Mr Purbeck was supposedly free to leave according to the incorrect findings of the magistrate court after the agents committed perjury in the suppression hearing, so under the 9th circuit precedent it would have been unreasonable to deprive the 2 individuals' access to a phone when requested. For Mr. Purbeck it was when he requested a lawyer. Because the warrant execution has been deemed to be subject to 9th circuit law, the suppression of this testimony from the defense is an ongoing Brady violation.

The government also actively interfered with Mr. Purbeck subpoenaing a witness (Stephen O'Meara) as well as concealing a Boise-based FBI witness to a (Brady/Napue) materially significant

---

[9] It is interesting how the agents in their personal capacity have possession of the private phone records of Ms. Gangers phone calls. These weren't provided to Mr. Purbeck in the criminal case evidence unless they were under the protective order.
[10] Ganwich v. Knapp, 319 F.3d 1115 (9th Cir. 2003) *1123

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 6

meeting that the next section will cover that resulted in prejudice. Stephen O'Meara's testimony made clear that he along with former Ada County Sheriff Stephen Bartlett, and at least one FBI agent (most likely former SSRA Doug Hart) from Boise was present in a meeting with Coffin that he committed perjury regarding the contents of in the suppression hearing. Both Ada County employees and Mr. Purbeck have testified to a <u>material</u> matter of perjury that can be proven against James Pinette that resulted in <u>prejudice</u>. The 9th circuit deferred to the 11th circuit on determining whether an exclusionary rule evaluation would be made in this circumstance[11]. The 11th circuit[12] would have required an evaluation for 3rd parties handling evidence but for the magistrate's misinformed determination that Pinette was more credible than Mr. Purbeck and that only he handled evidence not Ada County. Further the exclusionary rule bears on the party who caused the constitutional violation. As the violation occurred by two Idaho government employees subject to the Idaho constitution Article 1 Section 17 of the Idaho Constitution applies. Idaho with its peculiar version of the exclusionary rule does not recognize good faith or severance and as will be described later in the writ and requires complete suppression.

## Brady/Napue Evidence

In the Idaho Civil case as has been documented by the docket record, Mr. Purbeck has vigorously fought for the obtaining of records held by Ada County. There is a very specific reason for this. In May of 2020, the government provided two FBI 302 documents written one by Messrs. Pinette and Coffin and a second document written solely by Mr. Pinette where he observed a prosecution partner conducting a second interrogation of Mr. Purbeck[13]. These 302's were a heavily falsified version of the events

---

[11] United States v. Duenas, 691 F.3d 1070 (9th Cir. 2012) *1083

[12] U.S. v. Hendrixson, 234 F.3d 494 (11th Cir. 2000) *497 "Someone might argue that, although the Court withheld judgment on whether the exclusionary rule applied to evidence found by private parties, the rule nonetheless must definitely apply to the evidence seized by the government entities responsible for the Fourth Amendment Violation." Footnote 3 interpreting Wilson v. Layne, 526 U.S. 603 (1999)

[13] Mr. Herskowitz has adamantly refused to provide evidence from Ada County under the Brady and Jencks Acts, but has kept evidence as admissible that was handled by Ada County and this FD-302 of Ada Counties Interrogation

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 7

occurring on August 21st, 2019. Mr. Purbeck immediately knew the agents intended to bear false witness in court. So, from May 12th, 2020 Mr. Purbeck was fully aware of the slow motion deprivation of rights under color of law the two agents intended to commit. The petitioner on the very same day sent an email to Ada County HR seeking records from Ada County and formally filed a public records request the next day. He followed that up three months later with another public records request. He was ignored until the statutory deadline date whereby Sherriff Bartlett deliberately stonewalled production and hid that the records requested were destroyed. He claimed that they were being held back because the records were for an investigation by the FBI.[14]

> Dear Mr. Purbeck:
>
> We have received your request for information. Your request for on body video, audio, and photographs is being denied in accordance with Idaho Code §74-105(1) and §74-124(1)(a), which provide for denial of items that are still under investigation. Please note, this matter is still under investigation with the Federal Bureau of Investigation and you should contact their agency with questions regarding the status of this case.

But it turns out that was not accurate according to both Ada County employees. And Stephen O'Meara did specify that Sherriff Bartlett himself was asking about the lost recording (exbibit 2-page 88 line 3-20) and he was responsible for covering up its destruction. Defense would find out formally that the recording was destroyed sometime shortly after a letter was mailed from Boise to Atlanta on October 22nd, 2020. During that same time the government was pressuring Mr. Purbeck to take a fast-track plea deal for a crime he had no idea whether he could have committed. Mr. Purbeck was only shown the supposed evidence of this intrusion in **February of 2024** after Agent Coffin was dismissed from the lawsuit. Agent Coffin had deliberately hidden evidence that wasn't subjected to the protective order in a hard drive hidden in a directory that Mr. Purbecks attorney could not locate without government

---

[14] Because of this stonewalling and that specific response, it would have been reasonable for Mr. Purbeck to believe that the Sheriffs department considered itself part of the prosecution team and would turn over all evidence known to it in due time as required by the Jencks and Brady acts. It also further cemented in his mind that the secondary interrogation with Miranda by Ada County and with a federal agent (Pinette) who had previously interrogated him was a Seibert violation and ran afoul of Garrity v. New Jersey.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 8

assistance even though Mr. Purbeck has continually lamented a lack of any evidence in his court filings because all he has been provided is perjured and/or ineptly written reports by Agent Coffin where he demonstrates his profound lack of knowledge of technology and other ineptitude.

Without the out-of-the-blue revelation by the witness Stephen O'Meara in his civil deposition as a **witness for the defendants** it is possible Coffins deliberate perjury would have forever been hidden. There is no possible way the defense in the criminal matter could have ever determined that a meeting scheduled[15] by Sherriff Bartlett involving himself, Stephen O'Meara, Roderick Coffin (possibly James Pinnette depending on the context of the word "they" in the testimony) and an FBI suppressed witness from Boise later alluded to be SSRA Doug Hart occurred. But this meeting is very relevant for showing that at least Coffin (and possibly Pinnette) deliberately committed perjury to stymie a Garrity argument made by Mr. Purbeck. This was a deliberate falsification of an otherwise provable fact that the defense was prevented from showing the court because of a suppression of witnesses and evidence. Any evidence known by the government as a whole[16] which certainly included SSRA Doug Hart before he resigned in October 2022, but after the suppression hearing occurred in September 2022 would qualify as suppression of evidence by the government under 9th circuit law which the Due Process Protections Act order specified in ID general order 392 requires the government especially the District of Idaho[17] to comply

---

[15] Ada County has provided (corroborating O'Meara) evidence of a meeting organized by Sheriff Bartlett for this case occurring on August 20th, 2019. One day before the search and adding to evidence of Coffins deliberate perjury.
[16] United States v. Bundy, 968 F.3d 1019 (9th Cir. 2020) *1037 To the extent that any government agencies or actors, through their own flagrant misconduct, failed to make known exculpatory information, the flagrant nature of such conduct will be imputed to the prosecution—just as the agencies' or actors' Brady violations are imputed to the prosecution. See Youngblood v. West Virginia , 547 U.S. 867, 869–70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) (holding that a Brady violation occurs "when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor' ")
[17] U.S. v. W.R. Grace, 401 F. Supp. 2d 1069 (D. Mont. 2005) * 9 This case carefully considers and rejects the governments belief that forum shopping prosecutions absolves other districts and jurisdictional borders from providing defense Brady evidence. "As with [Rule 16(a)(1)(E)]'s definition of government, we see no reason why the prosecutor's obligation under Brady should stop at the border of the district. If a federal prosecutor has knowledge of and access to the exculpatory information as defined in Brady and its progeny that is outside the district, then the prosecutor must disclose it to the defense."
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 9

with. This perjury perverted the fact-finding process because the false testimony was accepted as true, along with all the other false testimony accepted by the court that Mr. Purbeck cannot prove. It was firmly in Mr. Purbecks mind that the agents told him near the beginning of the day that Ada County would be coming to his house to interview him. So, on day one of the suppression hearing Mr. Purbecks defense attorney asked Mr. Coffin the following questions under oath of course. Here is Coffins false testimony regarding Ada County. Pinette also testified he did not know of Ada County coming. According to evidence provided by Clark Harshbarger the only agents from Atlanta were Agents Coffin and Pinette. See also page 142 of exhibit 4 line 15-16. We know from other discovery AUSA Herskowitz was also in Idaho in Judge Bush's courtroom on August 19th, 2019. So it is possible he was also at the meeting described below. But the "they" mentioned in Stephen O'Meara's testimony below implies two people from Atlanta were in the meeting.

```
16   Q.  Am I right that either you or Agent Pinette advised Mr.
17   Purbeck that you are here with the FBI to execute a search
18   warrant and that his employer, Ada County, was going to be
19   coming out as well?
20   A.  No, that is not true.
21   Q.  Did you advise him at all that Ada County was en route
22   or would be coming out to the scene?
23   A.  Not initially.  To answer your question.  If we are
24   talking about on the driveway --
25   Q.  On the driveway did you do that?
```

[18]

[18] This is pages 87-89 of day 1 of the suppression hearing. Testimony of Roderick Coffin being examined by Andrew Hall petitioners attorney. Case 3:21-cr-00004-TCB-RGV Document 76-1 Filed 01/04/23
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 10

1  A. No.

2  Q. Inside the house did you do that? Tell him that?

3  A. No.

4  Q. Outside in the backyard did you tell him that?

5  A. No.

6  Q. Did you tell him at any time that Ada County would be

7  coming out to talk to him?

8  A. At some point later in the search we found out that Ada

9  County was coming to speak to Mr. Purbeck. And I don't

10 recall who gave that information to Mr. Purbeck.

11 Q. Would you recall if it was you?

12 A. I believe so, but I have no recollection of telling Mr.

13 Purbeck that Ada County was coming.

14 Q. Do you specifically remember any conversation with

15 Mr. Purbeck about Ada County en route, coming, going to be

16 here, anything, however you want to phrase it?

17 A. No.

18 Q. Do you recall Agent Pinette having a conversation about

19 Ada County while you were in the driveway?

20 A. No.

21 Q. All right. While you walked through the house with him?

22 A. No.

23 Q. In the backyard?

24 A. No.

25 Q. So you think it was either you -- excuse me -- it was

1  not you, it was not Agent Pinette, but it was someone else
2  who advised Mr. Purbeck that Ada County was coming out?
3  A.  I don't know.  I mean, it might have been Agent Purbeck
4  (sic.), but I just no recollection of who it was who told
5  Mr. Purbeck that Ada County was coming.
6  Q.  You said Agent Purbeck.  Did you mean Agent Pinette?
7  A.  My apologies.  I don't recall whether Agent Pinette or
8  anybody else was the one to tell Mr. Purbeck that Ada County
9  was coming.
10 Q.  Sounds like you have no recollection that occurring
11 regardless of who or how it happened.
12 A.  I remember learning that it was going to happen, but I
13 have no recollection of who would have informed Mr. Purbeck.
14 Q.  Did you know before you arrived at the search scene that
15 Ada County was going to be coming out?
16 A.  Did not know before the search.
17 Q.  Am I right that in this situation -- I am using "you"
18 collectively -- you, Agent Pinette, other members of the FBI
19 team, would not allow Mr. Purbeck to see Sarah Ganger?
20 A.  We would have allowed him to see her if he requested it.
21 Q.  When I say Sarah Ganger, you know who I am referring to?
22 A.  Yes.
23 Q.  That is his companion that he lives with in his house;
24 correct?
25 A.  Yes, sir.

U.S. DISTRICT COURT
LORI BURGESS, RMR

Now contrast that with the testimony of Mr. Stephen O'Meara who described an entire meeting
where the planning of this visit to Petitioners house was pre-planned in advance on August 20th,
2019 the day before the warrant execution.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 12

1   looking for them either, so...

2      Q.  Okay.  All right.  So what did the sheriff

3   tell you about what the FBI told him I guess the evening

4   before or after?

5      A.  Very little.  He said, "one of your people" --

6   and I say it like that, because that's how he was saying

7   it to me -- "was being investigated for identity theft."

8   And they wanted to arrest him, or take him, or go to his

9   house tomorrow morning.

10      And he's been -- he was asking me questions

11   about like how long has he been an employee? Of course,

12   this is all hitting me in the face. "How long has he

13   been working here in my office?" Those are all things I

14   had to find out for him, because I didn't really

15   remember. It didn't matter anyway, because he was very

16   pointed, "I want to know what he did here, at the

17   sheriff's office." "Okay. Yes, sir." "And you are

18   going to go with Pacheco. And he's going to ask a bunch

19   of questions. And you are going to explain to him,

20   Pacheco, any things he doesn't understand in your

21   answers. And then ask any questions that you don't

22   know." And, "Okay." "And be here in the morning at

23   7:00," or something. It was pretty early. "And we will

24   wait for the FBI to let us know when you can go over

25   there." It was pretty short.

Page 36

19

---

[19] Examination of Stephen O'Meara by Plaintiff/Petitioner Robert Purbeck (exhibit 2 pages 36-37)
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 13

1   And then the agents walked in, and the
2   introductions were made. Coffin was clearly, well, to
3   me, was the lead. He's the only person I really talked
4   to, even though there is a local FBI guy. This was
5   Coffin's baby. They told us they just flew in. We're
6   going to take everything. We're going to take it back
7   to Georgia, Atlanta. Not really a whole lot of data.
8   They -- I couldn't remember, they thought you
9   were a person. I recognize the name Lifelock. They
10  said that. He's part of this big organization, and
11  international, and all this kind of stuff. And I didn't
12  get to read anything. But basically they just told me
13  this. And said that, "We will let you know when you can
14  go."
15  And they made it clear that the Sheriff had
16  asked for the two of us to have to go to your house.
17  And that they had agreed to it. That was okay with
18  them. And I kind of got the feeling that maybe that was
19  almost like a -- they were being nice. Because I got
20  the feeling that -- it wasn't a local -- it's not a
21  local case. So they didn't have to go. And they didn't
22  have to let us go over there. Bartlett wanted it. And
23  I think the FBI said, "Okay." And so he said, "We'll
24  call you in the morning. You be here. We'll call you
25  in the morning. We'll tell you where the address is,

Veritext Legal Solutions
Calendar-Idaho@veritext.com 208-343-4004

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 14

And then just to clarify this wasn't somehow a misidentification of some sort. He's had numerous interactions with Coffin since.

> 17    Q.   (BY MR. PURBECK)  All right.  So you said
> 18  you've had conversations or interactions with Coffin
> 19  since this lawsuit occurred.  So can you explain what
> 20  happened in those hearings or those meetings or --
> 21    A.   They were generally me calling --
> 22        MR. REED:  Objection; lack of foundation.
> 23    Q.   (BY MR. PURBECK)  You had testified earlier
> 24  that you had had conversations with Coffin and -- well,
> 25  I mean, it would be -- I would like to know what

Page 50

Stephen O'Meara September 8, 2023

> 1   the -- if it related to this lawsuit, I would like to
> 2   know what the contents of those communications were?
> 3        MR. REED:  The same objection.
> 4    Q.   (BY MR. PURBECK)  You can still answer.
> 5    A.   We chatted a few times over the months, I
> 6   guess years now.  It's been a while.  He wanted
> 7   to -- mostly him calling me, I only called him once or
> 8   twice.  He wanted to return the equipment that he could.
> 9   I had asked for a copy of what I -- when we left your
> 10  house, I said "Can I get copies of what's on the hard
> 11  drives, on the thumb drive, and on the laptop that you
> 12  are keeping, just so we can look to see" -- I mean, you
> 13  said a lot of things in here about what you did or
> 14  didn't do -- what's on those things.  Because he made it
> 15  clear, I wasn't going to get them.  So I said, would you
> 16  please send me a copy.  I had to follow up to get copies
> 17  of those things.  He did send them.  We did look at
> 18  them.                                                    [20]

---

[20] This is highlighted to show that the agent refused to return hard drives to Ada County more information is available in the transcripts on pages 51-52 (exhibit 2) This is material because this is evidence developed by Ada County during the warrant execution and physically handled by Ada County.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 15

Another Napue/Brady violation is that James Pinette testified that he conducted a search of Petitioner while Ada County was present. This allowed the agent to make a false alibi for his sexual assault of Mr. Purbeck and also left the magistrate court falsely believing that Ada County at no point handled evidence allowing it to sidestep an exclusionary rule inquiry under binding 9th circuit and 11th circuit law.

```
 6   Q.  And during the course of that interview, did anyone
 7   search Mr. Purbeck?
 8   A.  I did.
 9   Q.  And what prompted the search?
10   A.  At some point during the Ada County interview,
11   Mr. Purbeck said that he had a hard drive in his pocket, and
12   he stood up and took a hard drive out of his pocket.  And at
13   that point it made me wonder if anyone had ever, you know --
14   and I heard they did a high-risk search, but did anyone look
15   for other evidence or weapons.  So at that point I did a
16   quick search of Mr. Purbeck.
17   Q.  And how long was the search of Mr. Purbeck about?
18   A.  It was really quick.  Five, ten seconds, maybe.
19   Q.  Did you touch Mr. Purbeck's genitals?
20   A.  No.
```
[21]

Now lets compare the testimony of the two other witnesses in depositions one of which was not allowed by the court to testify in the suppression hearing and the one who actually handled evidence that the previous section indicated Agent Coffin was refusing to return to the county

---

[21] Page 133 of day 1 of the suppression hearing. Witness James Pinette being examined by Sr. US Trial Attorney Brian Mund. He doubles down on the false alibi on page 151 lines 21-22. On page 161 he confirms only him, Petitioner, Stephen O'Meara and Ryan Pacheco are present during this interrogation.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 16

because the government considers it admissible evidence.

Q. What did Mr. Purbeck do?
A. He reached into his pockets, and he pulled out a hard drive of -- a portable hard drive and thumb drive and handed them to me.
Q. What did you do when he handed you those two items?
A. I was sort of surprised that he had them on him. I don't know anything about how law enforcement works. But he was sitting in the chair. And I assumed the FBI had done something. So I was surprised he had anything on him that produced these things. Oh, okay. Thank you. But I had been told the day before by either Coffin, or Hart, or somebody, that they would be taking all of the equipment, including county stuff.
And I held them in my hand. And I looked at the FBI agent, and I said, "I assume you are going to take these?" And he said, "Yes," and he took them immediately right then.

[22]

And here is Detective Pacheco's version of this same interaction.

Q. So I can't find the page that I have.
So James Pinette, the agent that you don't recall being there, he testified that you searched -- that he searched me while you were present. Did you watch an FBI agent search me?
A. I don't remember that.
Q. Okay.

---

[22] Page 21 exhibit 2 Witness Stephen O'Meara being examined by AUSA James Schaefer. This is also where Hart is alluded to having been in the meeting with O'Meara and Coffin and would be able to counter the perjury of Agent Coffin. This also directly contradicts the testimony of James Pinette as James Pinette was the FBI agent who was present in this exchange. Without Ada County being present this admissible evidence would not have been identified or handled improperly by a third party in violation of the 4th amendment, and Idaho article 1 section 17 (The Idaho Supreme Court makes clear that section 17 is evaluated on a whole different set of criteria than a 4th amendment violation. And a violation of either has no severance or good faith) see State v. Koivu, 272 P.3d 483 (Idaho 2012) An explanation of the Idaho Exclusionary rule in detail.

> 1    A. And if that had happened, I would have been
> 2 surprised why he wouldn't have noticed the other items
> 3 you have on there -- on you. But I don't -- I don't
> 4 remember him doing that. And I'm not saying he wasn't
> 5 there. I'm just saying, I don't know him by face. So I
> 6 know there were people there. I just don't know him
> 7 personally, and I don't know his name.
> 8    Q. He testified that he sat behind you during the
> 9 interview, in the chair?
> 10    A. It could be.
> 11    Q. Okay. But that doesn't jog your memory at
> 12 all?
> 13    A. I couldn't see behind me. I didn't look
> 14 behind me. I don't -- I don't know. What I do know is
> 15 at some point when you got those items out of your
> 16 pocket, they were passed to an FBI agent in the area. I
> 17 don't even remember turning around, and somebody sitting
> 18 is there, or somebody was standing, you know, by
> 19 Mr. O'Meara when I turned back. He handed those over.
> 20 And then I went -- I turned back to you. That's my
> 21 recollection I wasn't really paying attention.

[23]

the old information on the new computer. He then took a county issued external hard drive from his pocket and handed it to me. He said this device is what he would use to mirror the computers.

Purbeck then reached into his front pocket and pulled out a black thumb drive and said there might be some information on that as well. I asked if he had anything else in his pockets. He said no. (The external hard drive and thumb drive Purbeck gave me were handed over to the FBI and booked as evidence).

[24]

Another reason Mr. Purbeck was so adamant about getting the recording of the Ada County

interview was because the content of the 302 written by James Pinette was falsified compared to

his remembrance of the same interrogation and it would prove dishonesty and could be used as

---

[23] Pages 48-49 of exhibit 1. Witness Detective Ryan Pacheco being examined by Petitioner Robert Purbeck.
[24] Page 1 and 2 of Detective Ryan Pacheco's report to Sheriff Bartlett created on August 21st, 2019. Exhibit 6
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 18

impeachment evidence in the suppression hearing. Defense received a copy of Ryan Pachecos report written after the interrogation and given to Sherriff Bartlett. So, although it has some commentary it is as close to a recording as we could get in this circumstance, but a recording would have been more impactful for proving dishonesty. In a district with such a profoundly biased magistrate no Yankee local police officer was going to have more credibility than the perjuring good ol' boys. The only evidence that would have swayed him was a recording, that would be so much harder for him to falsify in his R&R so although Mr, Purbeck strongly disagreed with his Attorneys logic in not using the report to impeach Pinette's 302 what could he do? Detective Pacheco tries hard to not undermine the 302 of James Pinette in his deposition, but he does give away that a lot is missing from the report including key details. (exhibit 3 pages 39-42) And this is precisely why in 2019 and for the past 40 years it has been unreasonable for the FBI to be using 302's instead of recording every witness interaction, they are specifically designed to allow FBI agents to commit perjury.

## AUSA's Complicity in Hiding Evidence

At least five AUSA's have been complicit in hiding evidence from the defense in the criminal matter that have been revealed in the civil case and from public records requests from Ada County. Kitchens a former defendant in this case has trafficked in sealed documents from this case with James Schaefer to use as false witness in the suppression hearing where two government conspirators Herskowitz and Sistla themselves both lied to the court as though they were sworn witnesses that the contents of the filing at Docket 1 had never been revised. This was clearly false as by September of 2022 there was already a revised complaint and a request for a new revision and by then Judge Winmill had declared the complaint at docket 1 legally non-existent.

Both Darci Ward-Crane and James Schaefer are knowledgeable of the events that occurred in Idaho before the search warrant was executed and both have refused to correct the record in both

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 19

the civil and criminal case because they got the results they wanted. Depriving Mr. Purbeck of a fair chance to file a motion for summary judgement in 2022 (prior to the 9th Circuits Bivens change in the summer of 2023) based on perjured testimony in the suppression hearing violated Mr. Purbecks right to due process in both the civil and criminal cases. Both have an ethical obligation to correct a known fraud on a court even if it is not within the same district they practice in. James Schaefer is fully aware that his clients James Pinette and Roderick Coffin committed perjury in a Newnan, Georgia Federal courtroom because he has provided the documents to this court of that testimony and has firsthand seen the testimony of the witnesses in the civil case. A misinformed magistrate in Georgia cannot make credibility determinations accurately if two agents conspire with an AUSA like Michael Herskowitz to commit perjury. The agents as well who were defendants in this case and listened in to the testimony of Detective Pacheco and Stephen O'Meara have a Brady obligation to provide the knowledge that their lies had been uncovered in this case to provide that evidence to the AUSA in Georgia. Ada County attorney Dayton Reed also has an ethical obligation to tell the truth both to this court and to the court in Georgia when he becomes aware of a fraud on the court which is the position of the former defendants in the civil case. These ethical obligations for petitioner's 5th and 14th amendment rights to a fair proceeding in criminal trial exceed their clients' rights to hide evidence in their possession in a civil case. The Sovereign represented by Ward-Crane has no

authority to conceal perjury.

Subject to and without waiving the foregoing objections, Special Agent Coffin responds as follows:

Special Agent Coffin does not believe that he engaged in any illegal action related to this case or any other case involving Purbeck.

Special Agent Coffin is not in possession of responsive documents. Special Agent Coffin    25

Dated this 17th day of August, 2023.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
BY

JAMES R. SCHAEFER
ASSISTANT UNITED STATES ATTORNEY

Dated this 17th day of August, 2023.

RODERICK COFFIN
Special Agent
Federal Bureau of Investigation

Simply by not providing this evidence to the defense and to the prosecutor after it was discovered for use in the criminal trial violated the Due Process Protections Act and Brady obligations and was therefore a deprivation of rights under color of law. Further it is Misprision of Felony for the lawyers to act with deliberate indifference to their clients not performing their responsibilities to provide Brady evidence and concealing evidence of perjury. Mr. Purbeck still needs discovery to get even more damning evidence of flagrant perjury by the two agents. This discovery has been suppressed intentionally and can only be developed in the District of Idaho by Joshua Hurwit's unethical staff. Ada County is also in possession of additional undisclosed witnesses that can corroborate that the perjury occurred. That same discovery will also prove that Ada County failed to provide a name clearing hearing and fully intended to fire Mr. Purbeck from his job without due process of law. I think the testimony of Stephen O'Meara can mostly convince a jury of that, but the additional evidence that subpoenaing Doug Hart, Roderick Coffin and Stephen Bartlett

---

[25] Defendant Roderick Coffins answers to Plaintiffs first request for interrogatories. Pages 20-21. August 17th 2023 This is a document signed under oath in the Idaho civil case and constitutes perjury. Approximately a month later Stephen O'Meara testified in this case to very different facts and Ada County via Public Records request in May of 2024 produced evidence corroborating the testimony record of Stephen O'Meara. Neither Roderick Coffin or James Schaefer has corrected this fraud on the court in the District of Idaho or in the Northern District of Georgia.
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 21

could provide would show there was a concerted effort to violate Garrity and violate Petitioners right to due process in his possessory interest in his job at Ada County. Under oath in a more discerning court than Magistrate Vineyards kangaroo court[26] would be optimal.

## Mr. Herskowitz's Complicity in Perjury

Mr. Herskowitz is motivated in this case primarily by his cult form of Judaism. He has insisted on presenting false nexuses to Georgia in all the documents of the case to include Jewish victims from California and Florida without justification under the 6th amendment. Twice he presented plea agreements with Jewish victims in states with no relation to Georgia. Petitioners' belief is the California victim got dropped before the indictment was presented to the grand jury because she is a Messianic Jew who has publicly donated to Jews for Jesus. There is no compelling reason why the Agent wouldn't commit perjury to traffic travelling through California on its way to Georgia just the same as he would have been required to commit perjury to that fact for the Florida victim. But he falsely presented a nexus to Georgia in the warrant affidavit he wrote for Mr. Coffin. He insisted on a Georgia nexus[27] for a Florida victim who is also an apostate Jew like himself. There is not one reliable document he presented to the defense that could justify the

---

[26] This is not hyperbole. Magistrate Vineyard produced a list of exhibits at the end of the suppression hearing that was falsified. Docket document 67 None of the locations on the documents were correct. One was from California and the other was from the District of Idaho. The district court and appeals court would not have been able to locate the documents for review if needed because his illiterate secretary shouldn't be given clerk duties. In a corporation, a CEO signing off on an underlings falsified documents could be charged with a felony for accounting violations but in a federal court in the south government judges are given a pass for doing odious work that is far more important constitutionally than any accounting documents.

[27] The closest thing was a document where Coffin interviewed a guy working at the local cable company and asked him if it was possible for traffic to travel through Georgia on its way to Florida through Southern Bells (SBC) network. This would be like asking someone working at Walmart scrubbing toilets to explain in detail the sewage and waste removal system of the Pentagon. They can speculate but its completely unacceptable as "evidence" and is designed for an illiterate southern jury to make leaps in logic that they are unqualified to decide. The actual "evidence" manufactured in 2021 completely negates the governments false theory, it showed traffic traveling through Texas then on undersea lines to the Miami area but they refused to provide new evidence or drop that charge on the indictment because that was the Jew Mr. Herskowitz wanted to be praised by his congregation for helping.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 22

nexus to Georgia for something occurring in Miami. But he wants to be praised as a demigod at his wicked church. He attends Temple Sinai in Sandy Springs, GA with his wife and 2 children. His wife is a prominent member of the cult with a role as a treasurer of the "temple." Probably the one recurring theme of every sermon is the plight of Jews. The doctrine is very poor and consists primarily of platitudes and worshipping Jews as demigods. It's the original sin; that they can be like God. They get told week in and week out that they as Jews can control fate and even circumvent the prophecies of when Moshiach arrives through their righteousness. That God owes them something for their righteous deeds. It is not God honoring worship. It is also a lie that is firmly disputed by the prophets in the Nevi'im. The Moshiach the apostate Jews are waiting for and Mr. Herskowitz is attempting to conjure to the world through his Tikkun Olam (God calls this filthy unclean rags full of menstrual fluids[28]) is the Antichrist.[29] He is going to lead a huge war against Israel, and the only surviving Jews are going to flee to what is now Petra in Jordan and they will call out "Blessed is he who comes in the name of the Lord." Ps 118:26 Mt. 23:39 And the true Moshiach, Jesus will return to them. How much worse is the anger towards Israel and Jews going to heighten when the prophecies of the Nevi'im are fulfilled? Damascus will be destroyed in a single night by the Jews. Two of Lebanon's cities will fall Tyre and Sidon[30]. Iran is going to suffer a nuclear disaster in the area of Natanz; ancient Elam. The leader of Russia (Gog) is going to lead a confederation of nations including Türkiye, Persia, Ethiopia, and Sudan against Israel and is going to die in a biological or nuclear disaster in the Golan heights. The anger against Jews worldwide is already intense. In the US we have useful idiots of Satan protesting things they don't even know about on college campuses.

------

[28] Isaiah 64:6 (KJV) But we are all as an unclean thing, and all our righteousnesses are as filthy rags...
[29] Zechariah 11:15-17, Zechariah 12:1-4; 14:2, Isaiah 66:18
[30] Ezekiel 28

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 23

Petitioner is a Zionist and believes that Jews are mistreated, including the false witness being made by the prosecutor in South Africa presenting false evidence against Israel at the Hague. The evidence is produced by a terrorist group that sent monsters into Israel murdered and raped and even baked a baby alive on October 7th, 2023. Petitioner brings that up because presenting false evidence is a grave sin in the Tanakh. "Thou shalt not bear false witness against thy neighbor." Exo. 20:16, "A false witness shall not be unpunished, and he that speaketh lies shall perish" Prov. 19:9, "Then shall ye do unto him, as he had thought to have done unto his brother: so shalt thou put the evil away from among you." (Deut. 19:19 for full context Deut.19:15-21).

Mr. Herskowitz was present in Idaho during the events of the search warrant. He is aware of the meeting at the Sheriff's office though the petitioner can't prove it without additional evidence. Herskowitz has a duty to fix the frauds on the court, but he thinks his menstrual rags are more important than telling the truth. The ends justify the means in his mind.

Petitioner apologizes to the court that he must explain Mr. Herskowitz vile actions for what they are. He has treated this matter as a prosecution for his own apostate philosophy like a Talabani. He is no different than a Jihadist and this is the only explanation for this continued insistence on covering up perjury and his deliberate 6th amendment violations. He would not have had to make leaps in logic and present falsehoods in charging documents if he had simply prosecuted this in Idaho. He would have lost a suppression hearing though. But doing what is right is the Sovereign's prerogative not hiding evidence. All the witnesses except 2 were in Idaho, the nexus was proper, but he wanted to lie about 9th circuit law in a hostile court with witness credibility done by an old buddy. He hasn't been part of the division for more than 2 years but keeps on insisting on staying on with the case so he can cover up evidence because at this point it is the only way to save himself from prosecution and disbarment. Weakening the constitution for 9th circuit residents or anyone is not even good Tikkun Olam it will only lead to more Jews being persecuted in the long run by corrupt lawyers just like him.

## Lies Mr. Herwskowitz has covered up

The entire suppression hearing was full of lies told by the two agents. But that is only the beginning of the lies Mr. Herskowitz has covered up for Agent Coffin. Although Petitioner can't prove he wrote the warrant application it does appear Mr. Herskowitz filled out the pertinent sections for Mr. Coffin. He was there in Magistrate Bush's courtroom helping Coffin lie about the informant's credibility. Coffin provided the "evidence" all of which was false or falsely presented. All IP addresses save one used in the affidavit were not in any way attached to Mr. Purbecks home. A warrant is for a specific place to search or seize[31]. The magistrate in Georgia takes a frankly treasonous approach to evaluating warrants again using ends justify the means approach but the strict reality is nothing occurred the way the warrant affidavit laid it out. The bitcoin account that the agent lied about did not use Mr. Purbecks home address, but he lied and said all the bank accounts had the address of Mr. Purbecks home. The bitcoin transaction he flagged was tied to an IP address that was recorded in the blockchain and it was from an address in Nampa, not in Meridian. Same with the IP address used to tie the Coinbase account it was from the same static Nampa IP. The bank account was tied to a UPS store address. These things matter. Judge Bush would not have signed a warrant if he had known that the government hadn't told the truth about the correct place to search. The biggest lie of all was the informant they used had provided the agent with emails stating that Petitioner had certified he was not the person the informant believed him to be, but Herskowitz knew this would be a problem, so he hid those emails. If Petitioner could have seen his hard drive at any point prior to the motion to suppress deadline he could have shown the emails as well. He still hasn't been given access to locate

---

[31] Like the facts in United States v. Atencio, 1:21-cr-0058-DCN (D. Idaho Apr. 29, 2022) It would have been reasonable to search an address in Nampa (perhaps even Mr. Purbecks business warehouse location) with additional evidence it was not reasonable to assume anything was at Mr. Purbecks home. But Mr. Herskowitz has hidden the details of what the ISPS reported back for the locations of these addresses from the defense.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 25

documents that would have been useful for his defense. Instead, it took a court order for the

government to reveal the emails that Mr. Herskowtiz had deliberately concealed from the defense

and it was not for a lack for trying to receive them. But then he only turned them over after being

ordered by the court. But he still didn't provide the most important email that should be on

Petitioners hard drive and that the informant had admitted to destroying.

> 7. *Any communications between Dissent or Databreaches dot net.* We will produce any such
> responsive communications in our possession to capture your client's statements in
> accordance with Rule 16(1)(B)(i).                                                              [32]

Mr. Herskowitz also tried to cover up a lie about passwords until the evidence was right out in the

open about his lie. He pretends he has plausible deniability but there have been far too many

errors in this case and Mr. Coffin should have been thoroughly investigated by the DOJ to see

what he had lied about in this case. So at best Mr. Herskowitz is deliberately indifferent to the

truth and at worst he has repeatedly suborned and abetted perjury for his false works based

religion.

> during his August 2019 interview. The Government therefore wishes to correct
> the record in this respect and withdraw its prior representation that Purbeck had
> not provided the passcode for these two iPhones, and the Government agrees not
> to use evidence from the iPhones 7 and 8 in its case in chief at trial. As such, the
> Government respectfully submits that the Court should deny Purbeck's motion
> to suppress (Doc. 99) as moot.                                                              [33]

Mr. Herskowitz has also allowed the perjuries of the agents from the suppression hearing to stand

without any investigation of the agents even though he has read every document in the Idaho civil

case is alerted through ECF and even personally lied about the contents of the documents in the

suppression hearing as a unsworn testifying witness. It is inexcusable that Mr. Purbeck has

needed to seek out records from Ada County not through the Brady and Jencks Acts but through

--------

[32] Letter from Herskowitz to defense dated 6-29-21. He was ordered to provide them later in 2022.
[33] Government's Sur-Reply as To Defendant's Motion to Suppress 2023 Searches of Iphones. Case 3:21-cr-00004-TCB-RGV *2 document 107-1 filed 10/11/23
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 26

public records requests. And that evidence has provided proof the meeting with Sheriff Bartlett occurred, but Herskowitz will not correct the testimony for the perjury. He has refused to gather additional evidence from a prosecution partner in Ada County in Idaho even though he has relied on evidence they established during the search warrant. Mr. Purbeck has gathered some through public records requests, but who knows what else they have that would be beneficial. Instead of being provided this information through Jencks, petitioner had to forgo in-person testimony by Detective Pacheco in a negotiated deal to get his report of the interrogation attached as exhibit 6.

From: Herskowitz, Michael (USAGAN) <Michael.Herskowitz@usdoj.gov>
Sent: Tuesday, August 31, 2021 4:24 PM
To: Andrew Hall <andrew@h3-law.com>
Cc: Kitchens, Nathan (USAGAN) <Nathan.Kitchens@usdoj.gov>
Subject: RE: Purbeck - Ada County Sheriff Interview

Sure, Andrew. I am not going back with those questions, however. I don't see the relevance or that your client is entitled to that line of inquiry. Bottom line, we don't have the recording, but I wanted to provide you the context below as to why we don't have it. I believe it is sufficient.

Herskowitz knows the truth has the potential to get him jailed and disbarred if truly investigated. And when both Ada County employees testified to touching and handling evidence, he hasn't corrected the record to allow an inquiry whether Idaho and Federal law including the violation of section 17 of the Idaho Constitution rendered the entire search unreasonable. If lex loci doctrine applies to the 9th circuit, it even more so applies to Idaho law when evaluating an unreasonable search made by Idaho subdivision employees like Ada County and then whether Garrity was implicated by the acknowledgement of perjury being suppressed by Mr. Herskowitz. If an agent who knew he could lie in Vineyards court unabated is willing to commit perjury to an obvious provable fact with FBI and local law enforcement witnesses. He is certainly willing to perjure himself to every other fact in dispute in the suppression hearing such as the missing FBI audio recording, the Miranda form, refusing to allow a phone call to a lawyer and the lie about giving Mr. Purbeck water even though the two agents were at odds about that flagrant lie.

Relief is Needed Before September 11th, 2024

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 27

Mr. Purbeck has always wanted a fair trial with due process of law. Instead, the Government led by a wicked zealot has defecated on the Constitution. Herskowitz was allowed to forum shop a case where he had a vested conflict of interest and was an active civil litigant at the time and knew he would be sued if he failed in the prosecution. He even forum shopped it to a specific location within the district (with only one magistrate and judge) so he could guarantee an easily swayed judge in Georgia would be allowed to use his personal biases against the 9th circuit to weaken the Constitutional rights of all Americans living in the 9th circuit. That judge abused discretion in his orders boiling down decades of 9th circuit 4th and 5th amendment law in his order which is tantamount to seditious libel that mirrors his own personal philosophy not the Stare Decisis of the circuit. Furthermore, he claimed it is ok for the government to falsify nexus for the express purpose of allowing a less literate jury to make decisions they are not qualified to make. Then to ensure a specific outcome, the court wouldn't approve funding for items that would be necessary to make the defense. The overall cost to the government would have been far less to try the case in Idaho, so that Mr. Purbeck could have had access to better experts and the government wouldn't have had to pay for FBI agents to fly from Idaho for 15-30 minutes of examination. The court in Idaho would have treated the witnesses with more respect and actually allowed them to testify about the search and not whined about the time it took for defense to prove that the unmiranidized interrogation took 3 ½ hours in the backyard on a brutally hot day in August (much longer that Kim or Craighead) just like it is now in Idaho. The court in Idaho would also have used supervisory powers and ensured that the government complied with its Brady obligations.

The Government in Idaho has an obligation to correct the record for what it knows is untrue. And if it cannot call witnesses that were available in September 2022 such as Doug Hart, they should be ordered to drop the case unless alternative evidence can be found that hasn't been handled by Roderick Coffin. And the government has an obligation to investigate even the suspicion of

perjury that occurred both in this civil case by Roderick Coffin and also to correct what it knows is untrue from the suppression hearing. The DOJ in Idaho and this court should order Mr. Herskowitz to recuse himself from being a prosecutor in any court and be placed on administrative leave to provide a period of time whereby a neutral special master from a different district can be made available to review all the evidence in the case to see what was hidden from the defense. To determine what other perjuries by Roderick Coffin have been performed? To determine what other perjuries they can discover from James Pinette? If it is found that Mr. Herskowitz deliberately suppressed evidence he should be fired for cause immediately. Mr. Purbeck also proposes two other alternatives for Mr. Herskowitz. Under the Torah law he should be charged with sufficient perjury charges and misprision of a felony charges that would enable him to spend 10 years in prison to match the potential sentence he has attempted to have imposed through perjury on Mr. Purbeck. In the alternative, Mr. Purbeck would suggest that he should be allowed to use his law degree for good. He should be transported with free accommodations including room and board to work full time at Guantanamo Bay (it should mostly be halal) and he should be required to work cases for Muslims as their defense lawyer. His salary should be made dependent on how many people he frees. The federal minimum wage would be a good starting wage in his defense position and his accommodations should be taxed at the actual cost to taxpayers.

## Request for a Hearing

Mr. Purbeck requests a hearing to make oral arguments for his cause. His constitutionally ineffective defense lawyer has deliberately not read anything from this civil case and that has caused Petitioner great prejudice because the government had invented a false narrative, and it has only been through testimony in this civil case and public records requests Mr. Purbeck has made that has allowed some of the truth to break free. Mr. Purbeck requests a subpoena be issued to Roderick Coffin, James Pinette, former Sheriff Stephen Bartlett and Former SSRA Douglass

Hart so that Mr. Purbeck can help develop the truth the magistrate in Georgia, the Idaho DOJ and AUSA Herskowitz have deliberately ignored and willfully suppressed.

The Government in Idaho also has a duty to correct a flagrantly false ruling in a different court if it infringes on 9th circuit law that the ruling purports to be based on. For example, in the Trump case, the government has appealed several rulings when the district court issued a patently false order. The government as Sovereign must do what is right, not what makes an individual line prosecutor happy. In the case of Sergio Herran, United States v. Herran, No. 20-10157 (9th Cir. Oct. 29, 2021) which was argued in the 9th circuit in 2021 prior to Mr. Purbecks suppression hearing the case of Craighead was revisited. Judge Thomas was on the Craighead panel and in oral arguments for Herran described as a witness what he and the judges on the panel of Craighead decided. The oral arguments are archived on YouTube for Herran.[34] At 9:03 Judge Thomas explains the rationale of the Craighead court and makes clear the government's argument was absurd in the 9th circuit. This is the closest case with similar facts to the Petitioners case. Unlike Herran, Petitioner was not told he was free to go even with the magistrate's inept credibility findings. And the government which is the same sovereign represented with its attorneys' ethical obligations that it was telling the truth about 9th circuit law yet makes the same ridiculous arguments that are for all practical purposes pilloried by the panel in oral arguments in Herran. It is absurd that the government can falsify the law arguing 9th circuit law in one court when it absolutely knows it would fail in the 9th circuit on all levels. And so Mr. Hurwit has an ethical obligation to file a brief with the court that not only did his staff not investigate credible evidence of perjury but also that his staff didn't correct a grave error of law in the N.D. Georgia court. At the same time both Mr. Hurwit and Mr. Buchanan of the N.D. Georgia should both

_____

[34] https://www.youtube.com/watch?v=z7KdDWhS9BQ
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 30

tender their resignations to the president for failing to ensure their line prosecutors abide by their ethical obligations to do what is right even when a defendant isn't wealthy or powerful.

## REMEDY

Mr. Purbeck respectfully requests the court issue a Writ of Mandamus to order the United States of America in Idaho, Georgia and wherever else to provide evidence and testimony in its possession or was in its possession on September 1st, 2022 including evidence known to SSRA Doug Hart that would undermine the two agents testimony to the court in Georgia about the meeting that occurred at Ada County Sheriff's Office on August 20th, 2019. It had an obligation to provide this previously and it has refused to do so. Mr. Purbeck has requested it, although that is not a requirement for the ethical Brady obligations of the government. Same with any evidence produced in the Idaho civil case. If it cannot provide the evidence the government has an obligation to dismiss the indictment with prejudice. Petitioner further requests that the government produce evidence known to Ada County as a prosecution partner that undermines the Governments two witnesses testimony at the suppression hearing and any other evidence it has or knows about that would benefit the defense in this case. Mr. Purbeck also requests that Mr. Herskowitz and Agent Coffin or any other current prosecutor in the case be restricted from making any recommendation to the sentencing court in Mr. Purbecks criminal trial other than an apology that the government concealed evidence of perjury to material facts from the court. If the government or its prosecution partners is in possession of any other evidence that is favorable either to guilt or punishment it must be provided to defense. And sanctions under the Due Process Protections Act of 2020 be proscribed in the criminal case against the United States, Mr. Herskowitz, Mrs. Ward-Crane and Agents Coffin and Pinette.

Signed this ___11th__ day of August 2024

_/s Robert Purbeck_